IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02160-PAB-SKC

SHELTER GENERAL INSURANCE COMPANY, an out-of-state insurance company,

    Plaintiff,

v.

GOODYEAR TIRE & RUBBER COMPANY, an out-of-state corporation,

    Defendant.

## ORDER

This matter is before the Court on Defendant The Goodyear Tire & Rubber Company's Motion for Summary Judgment [Docket No. 42].[1] Plaintiff Shelter General Insurance Company responded to the motion, Docket No. 51, and The Goodyear Tire & Rubber Company replied. Docket No. 53. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### I. BACKGROUND

This dispute arises out of a vehicle accident that occurred on May 29, 2018. Docket No. 9 at 1-2, ¶ 4. On that day, Thomas Chevrier was driving a semi-tractor on Highway 34 in Washington County, Colorado when its front left tire blew out, causing the vehicle to cross the center of the highway and collide with another vehicle. *Id.*, ¶¶ 4-

---

[1] This document has three docket entries. Docket No. 43 is the restricted, un-redacted motion for summary judgment. Docket No. 42 is a redacted, public version of Docket No. 43 and Docket No. 56 is the same as the public entry, but has no attached exhibits.

5. As a result of the accident, the semi-tractor's owner, Jacob Nation, suffered economic losses to the vehicle and the cargo it was hauling. *Id.* at 2, ¶ 6. Shelter General Insurance Company ("Shelter") is Mr. Nation's insurer. *Id.*, ¶ 10. Shelter is suing The Goodyear Tire and Rubber Company ("Goodyear"), the manufacturer of the tire that blew out, to recover damages from the accident. Docket No. 9 at 1.

Shelter bases its suit against Goodyear on a theory that the tire blew out because of a manufacturing defect. *See generally* Docket No. 51. Shelter brings claims against Goodyear for negligence, breach of implied and express warranties, and strict liability. Docket No. 9 at 2-3, ¶¶ 11-27. Goodyear has moved for summary judgment on all of Shelter's claims, arguing that Shelter cannot prove that the tire was defective because Shelter has no expert witness to dispute Goodyear's evidence that its quality control system would have detected the defect that Shelter's tire expert identified, and therefore there could not have been a manufacturing defect. Docket No. 43 at 13-14. Goodyear argues further that Shelter has not identified a factual basis for the warranties it claims Goodyear breached. *Id.* at 14-15.

## II. FACTS[2]

The tire that blew out was a medium radial truck tire manufactured by Goodyear at its plant in Danville, Virginia ("Danville plant"). Docket No. 43 at 3, ¶¶ 1-2. The Danville plant used an automatic defect detection system, known as the YXLON ADR system, to examine 100% of the medium radial truck tires it manufactured. *Id.*, ¶ 2. The YXLON ADR system scans high-resolution x-ray images of the tires in order to detect anomalies, comparing them to inspection parameters, or "tolerances," defined by

---

[2] The following facts are undisputed unless otherwise noted.

Goodyear. *Id.* at 4-5, ¶¶ 4, 6, 8. The YXLON ADR system detects all anomalies on finished tire x-ray images with high reliability and designates tires as "pass," "downgrade," or "reject" depending on how well the tire matches the tolerances. *Id.* at 4, ¶ 7. [3]

Richard Sherman is Shelter's only tire expert. *Id.* at 6, ¶ 12. Mr. Sherman examined the tire at issue and concluded that it suffered from a manufacturing defect that caused it to blow out. *Id.*, ¶ 14. Specifically, Mr. Sherman concluded that an oil-soaked fabric had been incorporated into the tire at the time of manufacture. *Id.* at 6-7, ¶¶ 14, 16. Mr. Sherman testified that the foreign substance would have been visually apparent at the time of manufacture, manifesting as a blow. *Id.* at 7, ¶ 16. At the time that the tire was manufactured, the YXLON ADR system was calibrated to flag blows that were larger than 0.2 square inches. *Id.* at 5-6, ¶ 10. The YXLON ADR system would have rejected any tires that it flagged. *Id.* at 6, ¶ 11.[4] Mr. Sherman did not express any opinions on the YXLON ADR system in use at the Danville plant and he does not criticize the tolerances that Goodyear used to evaluate its tires. *Id.* at 7-8, ¶¶ 18, 20.

---

[3] Shelter purports to deny this fact, pointing out that Goodyear has not provided a margin of error to support its claim that the system will "detect all anomalies" and that Goodyear has not provided data indicating how many tires are given each designation after they are inspected by the YXLON ADR system. Docket No. 51 at 3 ¶ 7. Not only is this, in part, an improper relevancy objection, but Shelter cites no evidence to support the denial. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A). The Court therefore deems this fact admitted.

[4] Shelter purports to deny this fact, noting again that Goodyear did not provide the margin of error of the YXLON ADR system and that Mr. Sherman identified a defect in the tire when he inspected it. Docket No. 51 at 3-4, ¶ 11. This is an improper relevancy objection. The Court therefore deems this fact admitted.

A Goodyear interrogatory asked Shelter to identify any express or implied warranties that Goodyear had made that gave rise to Shelter's claims for breach of warranty. *Id.* at 9, ¶ 27. Shelter's response stated "[p]lease see [Mr. Sherman's report] concerning the incident giving rise to this case." *Id.*, ¶ 28. Mr. Sherman's report did not identify any express warranties. *Id.*, ¶ 29. Furthermore, Shelter never amended its discovery responses to identify an express warranty. *Id.*, ¶ 30.

### III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of*

*Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Bausman*, 252 F.3d at 1115.

## IV.  ANALYSIS

Shelter's complaint brings the following claims against Goodyear: negligence, breach of warranty, and strict liability.  Docket No. 9 at 2-3, ¶¶ 11-27.  Shelter's complaint alleges that Goodyear breached "both express and implied warranties," *Id.* at 3, ¶ 16, and the parties' briefs treat express and implied warranty allegations as distinct claims.  *See* Docket No. 43 at 14-15 (discussing express and implied warranty claims in separate sub-sections of the motion's argument); Docket No. 51 at 10 (addressing only implied warranty claims).  Accordingly, the Court will address Shelter's express and implied warranty claims separately.

### A.  Strict Liability

Shelter claims that Goodyear is strictly liable for damages resulting from the vehicle accident because a manufacturing defect caused the tire at issue to blow out. *See* Docket No. 9 at 3, ¶¶ 20-27.  Under Colorado law, a plaintiff must show that a product was defective in order to establish a prima facie case of strict liability.  *Hauck v. Michelin N. Am., Inc.,* 343 F. Supp. 2d 976, 987 (D. Colo. 2004) ("plaintiff must prove a defect in the tire in order to establish his claims for strict liability") (applying Colorado law); *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. App. 1993) ("To establish a prima facie

case of strict liability based on a defective product, the plaintiff must show that the product . . . was defective and . . . the defect existed at the time the product was sold or left the defendant's control").

Goodyear argues that Shelter must prove that the tire had a manufacturing defect to sustain its strict liability claim and can only do so through expert testimony. Docket No. 43 at 10.  But, because Shelter has no expert to rebut Goodyear's evidence regarding its quality control system, there is a lack of evidence on an essential element of Shelter's strict liability claim and Goodyear is entitled to summary judgment.  *Id.* at 10-11.  Goodyear's arguments hinge on the fact that the Danville plant uses a highly advanced x-ray system to screen tires for manufacturing defects.  *Id.* at 3, ¶ 2. According to Goodyear, no jury could find that the tire had a manufacturing defect unless Shelter is able to explain how the YXLON ADR system could have missed it.  *Id.* at 13.  Shelter's sole expert witness, Mr. Sherman, does not discuss the YXLON ADR system in his report.  *Id.* at 7, ¶ 18.  Mr. Sherman also declined in deposition to criticize the "tolerances"[5] used at the Danville plant during the screening process.  *Id.* at 7-8, ¶ 20.

Here, the critical fact regarding Goodyear's motion is not whether Shelter has expert testimony to refute the YXLON ADR system's defect detection abilities, but rather whether the tire at issue had a manufacturing defect.  *See Hauck*, 343 F. Supp. 2d at

---

[5] "Tolerances" refers to the parameters that the XYLON ADR system uses to analyze the x-ray images of newly-minted tires.  Docket No. 43 at 4, ¶ 6.  As the Court understands it, the tolerances govern how much a given tire can deviate from the "perfect" tire and still be approved for sale.  For example, one of the tolerances in place at the Danville plant governs the maximum size of defects known as "blows" or "voids" that a tire can have and still be considered "First Class."  *Id.* at 5-6, ¶ 10.

987 ("under applicable Colorado law the plaintiff must prove a defect in the tire in order to establish his claims for strict liability").

To support its claim that the tire had a manufacturing defect, Shelter cites the report written by Mr. Sherman. Docket No. 51 at 3-4, ¶ 11.[6] In it, Mr. Sherman concludes that the tired had a manufacturing defect. Docket No. 51-1 at 25, ¶¶ 5.1-5.2. (The tire "contained an oil-soaked foreign material defect. . . . [This is] a controllable manufacturing defect."). The report includes photographs of the alleged defect and explains the process that Goodyear uses to make tires, including how the process could have gone wrong and how a foreign material could have been incorporated into the finished tire. *Id.* at 7-17. Mr. Sherman describes the tire manufacturing process and explains exactly how the defect could have happened. Docket No. 51-2 at 2 ("The fibers present [in the tire] were, more likely than not, remnants from the fabric of a 'swab' still wet with the [oil] during the improper application of [the oil] to the tire during assembly.") Although Mr. Sherman is not an expert in the YXLON ADR system, he draws on seven years of experience working for Goodyear in tire design and quality control. Docket No. 51-3. In other words, Mr. Sherman's opinions provide a detailed description of the tire's alleged defect and a hypothesis about how that defect could have occurred, presented by a former Goodyear employee who is familiar with the tire manufacturing process.

Goodyear argues that Mr. Sherman's report and testimony are not sufficient to sustain Shelter's claim that the tire was defective, citing to several cases where courts

---

[6] Goodyear does not object to Shelter's references to Mr. Sherman's report and, in fact, Goodyear's motion is predicated on Goodyear being entitled to summary judgment despite the opinions in Mr. Sherman's report.

found plaintiffs' expert testimony lacking. Docket No. 43 at 11-13; Docket No. 53 at 5-6. However, these cases do not support Goodyear's conclusion that the Court should enter summary judgment against Shelter. Two cases concern motions to exclude experts under Federal Rule of Evidence 702. Docket No. 43 at 13 (citing *Gallegos v. Swift & Co.*, 237 F.R.D. 633 (D. Colo. 2006)); Docket No. 53 at 6 (citing *Bullock v. Daimler Trucks N. Am., LLC,* No. 08-cv-00491-PAB-MEH, 2010 WL 4115372 (D. Colo. Sept. 30, 2010)). These cases are irrelevant because Goodyear has not challenged the qualifications or methodology of Mr. Sherman's opinions regarding the defect he believes exists.

Two of the other cases that Goodyear cites in support of its argument that Shelter lacks essential expert testimony concern disputes where plaintiffs had no admissible expert testimony to support the claims at issue. Docket No. 43 at 11-12 (citing *Hauck*, 343 F. Supp. 2d at 988-89 and *Fischer v. BMW of N. Am., LLC,* No. 18-cv-00120-PAB-MEH, 2020 WL 5798526, at *8 (D. Colo. Sep. 29, 2020)). In *Hauck,* the court granted summary judgment on the basis that the plaintiff's case was "founded on" the conclusions of an expert whose testimony was later excluded. 343 F. Supp. 2d at 989 ("As [the expert's] testimony has been excluded by virtue of this Court's ruling on the defendant's *Daubert* motion, there is insufficient evidence to allow plaintiff's claims of strict liability, negligence, or breach of warranty of merchantability to go to trial."). In *Fischer*, the court granted summary judgment for the same reason. 2020 WL 5798526, at *3 ("Because plaintiff's sole liability expert's opinions concerning a design defect have been excluded . . . defendant has met its burden of identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. . . .[P]laintiff has not met

his burden . . . to preclude summary judgment.") (internal quotation marks and citation omitted). These cases would support Goodyear's arguments if Shelter needed to produce expert testimony about the YXLON ADR system to avoid summary judgment. However, as discussed above, Shelter does not need to produce such testimony. Shelter's strict liability claim only requires expert evidence that the tire was defective, which it has in the form of Mr. Sherman's testimony. Accordingly, *Hauck* and *Fischer* do not support Goodyear's position.

Finally, Goodyear cites *Nesavich v. Auto-Owners Ins. Co.,* No. 16-cv-01493-PAB-STV, 2018 WL 3729513 (D. Colo. Aug. 6, 2018), in support of its argument that Shelter lacks essential expert testimony. Docket No. 53 at 5. *Nesavich,* however, dealt with a question of temporal causation, namely, whether a hailstorm within the policy period caused the damage to plaintiffs' roof or whether a storm that occurred outside the policy period caused the damage. 2018 WL 3729513, at *4. Here, however, the issue is whether the undisputed facts about Goodyear's quality control system prove that the system was so good that the defect identified by Mr. Sherman could not have been a manufacturing defect. Thus, Shelter does not lack an essential expert. Rather, the issue is whether the undisputed facts regarding the XYLON ADR system allow the Court to disregard Mr. Sherman's testimony as necessarily speculative.

Goodyear claims that, without an expert to "bridge the analytic gap" between the defect that Mr. Sherman claims is a manufacturing defect and Goodyear's evidence regarding the abilities of the YXLON ADR system, plaintiff is asking the jury to speculate about how the tire could have avoided quality control detection. Docket No. 53 at 5. Specifically, Goodyear states that "Plaintiff speculates that the YXLON ADR system

9

must have missed the alleged defects due to an unidentified error rate but does not cite to any evidence suggesting that XYLON ADR system even has a margin of error, let along that an error actually occurred." *Id.* Goodyear is incorrect. In order for Goodyear's evidence about its quality control program to be so strong as to entitle it to summary judgment, despite Mr. Sherman's opinions about there being a manufacturing defect, Goodyear, not plaintiffs, would need to introduce undisputed evidence about the error rate of the YXLON ADR system. In fact, Goodyear has done so to some extent. It is undisputed that the system will "detect all anomalies on finished tire x-ray images with high reliability." Docket No. 43 at 4, ¶ 7. Goodyear, however, fails to define "high reliability." "High reliability" is not 100% reliability. Thus, based on the undisputed facts and viewing the evidence in a light most favorable to the non-moving party, a reasonable jury could conclude from the testimony of Mr. Sherman that a manufacturing defect occurred in the tire and that the YXLON ADR system failed to detect the defect, rejecting the argument that it was impossible for the system to miss the defect and instead finding that the system's failure to detect the problem fell within the system's margin of error. As a result, the Court will not grant Goodyear's summary judgment motion on plaintiffs' strict liability claim.

### B.  Negligence

Under Colorado law, a negligence action consists of the following elements: (1) that the defendant owed the plaintiff a legal duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered damages; and (4) that the defendant's breach caused the damages. Westin *Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015). In a negligence action concerning an allegedly defective product, a plaintiff must

prove that the product was defective. *Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198, 205 (Colo. 1992).

Goodyear moves for summary judgment on Shelter's negligence claim on the same grounds as on its strict liability claim—that Shelter lacks evidence on an essential element of the claim. Docket No. 43 at 11; Docket No. 53 at 8-9. As with strict liability, Shelter must prove that the tire was defective to establish its negligence claim. *Hauck*, 343 F. Supp. 2d at 987. As previously stated, Shelter has produced sufficient evidence to create a genuine issue of material fact whether the tire had a manufacturing defect. Goodyear has not argued that Shelter lacks evidence on any other essential element of its negligence claim. *See generally* Docket Nos. 43, 53. Accordingly, the Court will deny Goodyear's motion for summary judgment on Shelter's negligence claim.

### C. Breach of Express Warranty

Goodyear moves for summary judgment on Shelter's claim for breach of express warranty on the grounds that Shelter cannot prove that Goodyear made an express warranty. Docket No. 43 at 14. Goodyear claims, and Shelter does not dispute, that it asked Shelter in an interrogatory to identify the warranties that its warranty claims are based on and Shelter responded by referring Goodyear to Mr. Sherman's report. *Id.* at 8-9, ¶¶ 26-28. It is undisputed that Mr. Sherman's report does not identify any express warranties. *Id.* at 9, ¶ 30.

"To state a claim for breach of an express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claimed as damages, and (4) defendant received timely notice of the breach." *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020)

(quotation marks and citation omitted) (applying Colorado law). Shelter has provided no evidence that Goodyear made an express warranty. *See generally* Docket No. 51. When a party fails to address the arguments that its opponent puts forth in a motion for summary judgment, that party's claim is usually deemed abandoned. *See Hinsdale v. City of Liberal, Kan.,* 19 F. App'x 749, 768-69 (10th Cir. 2001) (upholding district court's conclusion that plaintiff "abandoned his equal protection claim by failing to address it in his response to defendants' motion for summary judgment."); *Hutton v. Woodall,* 70 F. Supp. 3d 1235, 1239 (D. Colo. 2014) (finding claims abandoned where plaintiff failed to address defendant's summary judgment arguments). Accordingly, the Court will grant Goodyear's motion for summary judgment on Shelter's claim for breach of express warranty because Shelter has abandoned that claim.

### D. Warranty of Fitness for a Particular Purpose

In its complaint, Shelter alleges that Goodyear "made both express and implied warranties . . . that the tires . . . were for the particular purpose for which the blown out tire was used" and that "[t]he blown out tire was not as warranted, and not suitable for the particular purpose for which it was warranted." Docket No. 9 at 3, ¶¶ 16, 18. Goodyear seeks summary judgment on Shelter's claim for breach of implied warranty for fitness of a particular purpose. Docket No. 43 at 15. To prove a claim for breach of warranty of fitness for a particular purpose, a plaintiff must demonstrate that, at the time of contracting, the seller had reason to know of any particular purpose for which the goods were required and that the buyer relied on the seller's skill or judgment to select or furnish suitable goods. Colo. Rev. Stat. § 4-2-315; *id.,* Cmt. 2 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a

specific use by the buyer which is peculiar to the nature of his business."); *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 208 (Colo. 1984).

Goodyear argues that Shelter has provided no evidence of this type of implied warranty. Docket No. 43 at 15. Goodyear points to the fact that Shelter responded to its interrogatory regarding warranties by directing Goodyear to Mr. Sherman's report. *Id.* at 9, ¶¶ 27-28. Mr. Sherman's report does not contain any information about the sale of the tire at issue, so it cannot show that Goodyear knew about any particular purpose the tire was going to be used for or that the buyer relied on Goodyear's expertise in that area. Furthermore, the report does not indicate that the tires were being used for anything other than their ordinary purpose. In fact, Shelter's response to the motion for summary judgment states that "the tire at issue was being utilized for the ordinary use for which a tire is used." Docket No. 51 at 10. Thus, Shelter has failed to produce evidence demonstrating that there are any circumstances giving rise to a warranty of fitness for a particular purpose. Goodyear is entitled to summary judgment on this claim.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant The Goodyear Tire & Rubber Company's Motion for Summary Judgment [Docket No. 42] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that Defendant The Goodyear Tire & Rubber Company is entitled to summary judgment on plaintiff's second claim for breach of express warranty and breach of warranty of fitness for a particular purpose. It is further

**ORDERED** that plaintiff's second claim for breach of express warranty and breach of warranty of fitness for a particular purpose is **DISMISSED with prejudice**.

DATED March 27, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge